IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LARCHMONT HOLDINGS, LLC,

                  Plaintiff,

    v.

NORTH SHORE HOLDINGS, LLC and
WILLIAM BETHKE,

                  Defendants.

OPINION AND ORDER

16-cv-575-slc

---

This lawsuit arises out of a multi-million dollar land contract involving frac sand. Plaintiff Larchmont Holdings, LLC chose to file in federal court, claiming diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Defendants Northshore Holdings, LLC and William Bethke dispute Larchmont's claim of diversity and have moved to dismiss this lawsuit for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See* dkt. 11. For the reasons stated below, I am denying this motion.

Defendants, who both are residents of Wisconsin contend that two members of Larchmont (Neal Benham and Richard McHugh) also are domiciled in Wisconsin rather than Florida, as Larchmont contends.[1] *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007) (citizenship of limited liability company is citizenship of each of its members); *McCready v. EBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (no plaintiff may be a citizen of the same state as any defendant). As the party invoking federal diversity jurisdiction, Larchmont bears the burden of demonstrating that the parties are diverse. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 617 (7th Cir. 2012); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997). Larchmont has met this burden in this case.

---

[1] In their opening brief, defendants also questioned the domicile of the other individual members of Larchmont, but they did not pursue this in their reply brief.

Although the briefs and declarations submitted by the parties indicated that Benham and McHugh probably were domiciled in Florida, I held an evidentiary hearing on December 7, 2016 to ensure that no relevant stone was left unturned.  *See* Nov. 10, 2016 Text Ord., dkt. 26; *Midwest Transit, Inc. v. Hicks*, 79 Fed. Appx. 205, 209-10 (7th Cir. 2003) (noting evidentiary hearing likely necessary to determine credibility of defendant's citizenship claim where his contacts point to two states as possible domiciles).  Having considered the evidence presented at the hearing and the record as a whole, I conclude that all of the members of Larchmont were domiciled in Florida  when Larchmont filed this lawsuit.  This makes Larchmont a citizen of Florida.  Because both defendants are citizens of Wisconsin, diversity exists and this suit can remain in federal court.

Before setting forth the findings of fact, one preliminary matter deserves attention: at the evidentiary hearing, defendant Dr. Bethke testified that the signature on the October 7, 2016 declaration submitted in his name, *see* dkt. 13, was not his.  At the court's request, defendants investigated and subsequently reported that Connie Bethke had signed the affidavit with her husband's permission while he was on a hunting trip in South Dakota.  Dkt. 38.  Defense counsel explained that Dr. Bethke did not remember these events at the hearing but subsequently was able to refresh his recollection by discussing this with his wife.  Counsel also explained that Dr. Bethke's memory was impaired by stress resulting from other events occurring during this time.  Although defendants concede that they have not found any authority for entering into evidence a declaration signed by the declarant's spouse, it is not necessary to resolve this issue because the declaration is not essential to the court's jurisdictional analysis.  Dr. Bethke testified at the hearing about the facts contained in the declaration, and Larchmont

2

had an opportunity to cross examine him.  Therefore, I have not considered the first declaration of Dr. Bethke.

I have drawn the following facts from the evidentiary hearing and written submissions provided by the parties:

## FACTS

### I.  Background

Plaintiff Larchmont Holdings, LLC was organized under Wisconsin law on December 18, 2012, with its principal place of business in Eau Claire, Wisconsin.  Its members are David Westrate, Westrate's Roth IRA and traditional IRA, Dr. Neal Benham's Roth IRA, and Patricia and Richard McHugh.  Dkt. 1.

Defendant North Shore Services, LLC was organized under Wisconsin law on October 18, 2000, with its principal place of business in Eau Claire, Wisconsin.  North Shore is wholly owned by defendant Dr. William Bethke, an individual who is a citizen of Wisconsin, where he is domiciled and resides.  *Id.*

Dr. Benham and Dr. Bethke are practicing dentists who have shared an office since 1986 under the name All Family Dental.  Dkt. 37, exh. 1; dkt. 40 at 12-13.  Although Northshore has not yet filed an answer, Larchmont alleges the following with respect to the parties' relationship in its complaint:

In the summer of 2012, Bethke approached Benham, and subsequently Westrate, with the idea of developing a frac sand project on approximately 300 acres of recreational land in Jackson County, Wisconsin that Bethke owned through North Shore Services.  Dkt. 1, ¶ 27.  Following various negotiations throughout the fall of 2012, in December 2012 the direction of

3

the negotiations changed, leading Benham, Westrate, and Westrate's friends, Richard and Patricia McHugh, to form Larchmont Holdings on December 17, 2012 for the purpose of purchasing the Jackson County property and developing a frac sand mining and processing operation. *Id.* at ¶¶ 30, 41. On December 20, 2012, Larchmont and North Shore entered a contract for Larchmont's purchase of the land. *Id.* at ¶ 42. The parties' business relationship soured over the next few years, resulting in the filing of this lawsuit on August 19, 2016. Larchmont alleges fraudulent inducement, frustration of purpose, unjust enrichment, and reformation of the land contract. Dkt. 1.

**II.  Dr. Neal Benham**

From 1980 until 2001, Dr. Benham owned a home and lived full-time in Eau Claire, Wisconsin. In October 2001, Dr. Benham and his wife Jane moved to Florida. They kept their Eau Claire house as a second property. Since 2001, the Benhams have lived in six different residences in Florida, the most recent purchased in January 2015. Since 2002, Dr. Benham has classified the Florida home as a primary residence and the Eau Claire home as a secondary residence for insurance purposes. Jane is a Florida resident and has a license to work as a part-time real estate referral agent in the state. Dkt. 18; dkt. 40 at pp. 41-44 and 68-69.

Dr. Benham estimates that after moving to Florida, he continued to work at his dental practice in Wisconsin for about 120 days every year since 2002. Between January and August 2016, Dr. Benham worked about half of the work days in each month and he made six round trips between Florida and Wisconsin. When in Wisconsin, Dr. Benham typically works full days on Mondays, Tuesdays, Thursdays, and Fridays and either a half day or not at all on

4

Wednesdays.  When Dr. Benham is working in Wisconsin, he does not return to Florida over the weekends between his work weeks. Dkt. 18; dkt. 40 at pp. 49-51 and 73-78; dkt. 37, exhs. 3 and 7.  For example, between January and April 2016, Dr. Benham spent two full work weeks and the weekends in between those work weeks in Wisconsin.  Dr. Benham spent closer to three work weeks in Wisconsin from May through July 2016. Dkt. 37, exh. 7.  Although Dr. Benham testified that he is in the process of selling his dental practice, he continues to market his practice in Wisconsin. Dkt. 40 at p. 57 and 61.  When Dr. Benham is in Wisconsin, he stays at his Eau Claire house and drives a corporate car registered in Wisconsin.  *Id.* at p. 58.

Dr. Benham has wanted to live in Florida since he graduated from dental school and he returned there even when working in Wisconsin in order to see his friends and experience the warmer weather. Dkt. 40 at 88-89.  Dr. Benham claims a homestead tax credit in Florida, he has voted in Florida since 2002, and has held a Florida driver's license since 2002.  Dr. Benham pays his income taxes through his Florida residence, he owns and registers two cars in Florida, receives Medicare and Social Security benefits in Florida, and he is a member of a church and a country club in Florida.  Dr. Benham uses three banks in Florida, has executed estate planning documents with a lawyer in Florida, and sees a cardiologist in Florida.  Dr. Benham plays 50 to 60 rounds a golf a year in Florida.  Since 2008, Dr. Benham has been an Associate Professor in Pediatric Dentistry at the University of Florida, where he gives lectures and teaches in the clinic approximately 18 to 20 days a year.  In 2009, Dr. Benham obtained a Florida dental license, but it is a limited license that only allows him to work in unpaid positions, taking care of children in federally qualified health care facilities.  Dr. Benham has a firearm concealed carry permits in the states of Florida and Utah.  Dr. Benham could not apply for a conceal and carry permit in

Wisconsin because he is not a resident of Wisconsin.  Dkt. 18; dkt. 40 at pp. 44-49, 62-63, 68-70, and 80-84.

As for Wisconsin connections, in addition to his Eau Claire house and dental practice, Dr. Benham has maintained his relationship with two investment firms in Wisconsin that handle about 80% of his investments.  Dr. Benham has a Wisconsin accountant, a Wisconsin bank account, and he keeps a car in Wisconsin that he uses for business purposes.  His dentist (Dr. Bethke) is in Wisconsin.  Dr. Benham's Colorado elk hunting license lists the Eau Claire address of All Family Dental.  Dr. Benham is a membership of a Wisconsin country club where he plays about 25 rounds of golf a year.  When Dr. Benham went hunting in Colorado, he left from and returned to Wisconsin, bringing the meat and antlers from his elk with him.  Dr. Benham also hunts in Wisconsin but he has obtained a nonresident license since 2001.  After moving to Florida, Dr. Benham continued to make contributions to Wisconsin state political candidates because of his business interests in the state.  Dkt. 40 at p. 46, 65-68, 71, 79-80.

## III.  Richard and Patricia McHugh

Richard and Patricia are married and are both members of Larchmont Holdings.  They have owned a home in Eau Claire, Wisconsin since 1980 and a home in Augusta, Wisconsin since the mid 1990s.  In June 2014, they bought a home in Naples, Florida.  Dkt. 40 at p. 91.

The McHughs made Florida their primary residence in December 2014.  They currently spend at least six months of the year in Florida and intend to spend all of their time there after Richard fully retires from his current businesses. Dkts. 19, 20 and 40 at pp. 93-94. Richard and Patricia vote in Florida, they insure their Florida home as their primary residence, they file

federal income taxes in Florida, they claim a Florida homestead tax credit, they are members of a church Florida, they receive Medicare in Florida, use the services of a Florida attorney, have their primary bank account in Florida, and they have received mail related to their banking, investments, credit cards, and social security benefits in Florida since before Larchmont filed this lawsuit.  Dkts. 19, 20 and 40 at pp. 94-95, 106, 116.  The McHughs both have Florida driver's licenses and each owns a car registered in the state.  *Id.*

Richard is the managing partner of Choice Products USA, LLC, a Wisconsin fundraising corporation, and Choice Commercial LLC, a commercial real estate company in Wisconsin. Richard reduced his professional work in Wisconsin by 50% when he moved to Florida.  Dkt. 40 at pp. 94-102.  Richard currently works about eight hours a week for Choice Products during the times he is in Florida; he works a bit more than that when he is in Wisconsin.  *Id.* at pp. 96-97.  Richard spends about one and a half hours a week making telephone calls for Choice Commercial.  *Id.* at p. 98.  Richard owns 50% of Empire Financial Solutions, which has warehouses in Iowa and Wisconsin, but he does not work for the company on a regular basis. Richard has been the chairman of the board of a bank in Eau Claire for over 30 years, but he conducts most of his business for this bank from Florida. Richard attends six to eight board meetings a year, staying in Wisconsin only a few days for each meeting.

Richard has an accountant, investment advisor, bank account, and a church in Eau Claire. *Id.* at pp. 105, 112-13; dkt. 19.  Richard has made political contributions to Wisconsin state candidates and organizations as recently as the summer of 2016, but he does so because his businesses are located in the state. Dkt. 40 at p. 104.  At the time this lawsuit was filed, Richard

did not own a car or have a driver's license in Wisconsin.  *Id.* at pp. 114-15.  Richard has not

applied for a resident Wisconsin hunting license since 2010.  *Id.* at pp. 115-16.

## IV.  David Westrate

Westrate is a member of Larchmont and the owner and beneficiary of both a Roth IRA

and a traditional IRA that also are members of Larchmont.  The IRAs are held by a custodian

located in Dallas, Texas.  He has owned a home in Ellenton, Florida since 2005 and made it his

permanent, primary residence after he retired in 2012.  Dkt. 17.  Westrate spends seven months

a year in Florida and votes, files federal income taxes, attends church, sees doctors, and obtains

banking, investment, estate planning, social security, and Veterans Administration services and

benefits in Florida.   Westrate has had a Florida driver's license since July 2013 and has at least

one car registered in the state.

Westrate's former lakefront home in Eau Claire, Wisconsin is owned by an irrevocable

trust; his four adult children are the beneficiaries and Michael Westrate is the trustee.  Although

Westrate stays at the home when he visits Wisconsin, he uses it solely as a vacation property.

Westrate owns two vehicles that are registered and insured in Wisconsin, but they remain at the

lakefront property for use by visitors.  Westrate owns 40 acres of hunting land and a house in

Wisconsin that he has rented as an investment property since building it in 2009.  Westrate

purchases non-resident hunting and fishing licenses in Wisconsin and several other states.

Westrate has ownership interests in several corporations in various states, including

Florida and Wisconsin.   He serves on the board of directors of a Wisconsin charitable

foundation and a bank incorporated in Maryland.  He performs his work as a business owner and board member remotely from his home in Florida.

## OPINION

In order to establish this court's diversity jurisdiction over the instant lawsuit, plaintiff Larchmont Holdings, LLC must establish to the court's satisfaction that Larchmont is not a citizen of the same state as either North Shore Services, LLC or William Bethke.  *Appert*, 673 F.3d at 617; *Avila v. Pappas*, 591 F.3d 552, 553 (7th Cir. 2010) (court has independent obligation to ensure subject matter jurisdiction exists).  Because Larchmont and North Shore are limited liability corporations, their citizenship depends on the citizenship of each of its members. *Thomas,* 487 F.3d at 534.

Bethke is the sole member of North Shore, and the parties do not dispute that he, and therefore North Shore, are citizens of Wisconsin.  Larchmont has several members, including David Westrate, Westrate's Roth IRA and traditional IRA, Neal Benham's Roth IRA, and Patricia and Richard McHugh.  As with an LLC, the citizenship of an individual retirement account is determined by the citizenship of its members or owners—in this case, Westrate and Benham.  *Americold Realty Trust v. Conagra Foods, Inc.*, __ U.S. __, 136 S. Ct. 1012, 1015 (2016) (for purposes of diversity jurisdiction, citizenship of "unincorporated entities" depends on citizenship of their "members," which the Court has equated as "owners").  Therefore, to determine whether diversity of citizenship exists, I must determine the individual citizenship of Westrate, Benham, and Patricia and Richard McHugh.  It also is a well-settled rule that diversity

of citizenship must be assessed at the time this action was filed on August 19, 2016.  Dkt. 1;

*Freeport-McMoRAN, Inc., et al. v. KN Energy, Inc.*, 498 U.S. 426, 428 (1991).

In determining the citizenship of individuals, courts generally look to where the parties are domiciled, that is, where they have their permanent, fixed homes to which they have the intention of returning whenever they are absent therefrom.  15 Coquillette *et al.*, *Moore's Federal Practice 3d* § 102.34[1], 3d ed. 2014.  To determine domicile or where an individual intends to make his home, courts look for objective manifestations of intent, such as where the individual is employed and registered to vote; where he exercises civil and political rights; where he pays taxes and receives mail; the location of his bank accounts, personal property and any land he owns; and whether the individual belongs to any clubs or organizations in a particular state. *More v. Callahan*, No. 12-CV-905-bbc, 2015 WL 137270, at *2 (W.D. Wis. Jan. 9, 2015); *O'Neal v. Atwal*, 425 F. Supp. 2d 944, 947 (W.D. Wis. 2006) (citing 15 *Moore's Federal Practice* at § 102.36[1]).  *See also Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008) (looking at party's voter registration, property ownership, and tax information to determine domicile); *Midwest Transit,* 79 Fed. Appx. at 208 (domicile has been assessed based on "current residence, voting registration and voting practices, location of personal and real property, location of financial accounts, membership in unions and other associations, place of employment, driver's license and automobile registration, and tax payments"); *Perry v. Pogemiller*, 146 F.R.D. 164, 167 (N.D. Ill. 1993) ("Courts have also listed other facts as relevant [to the determination of a party's domicile], including . . .the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc.") (internal citation omitted), *aff'd*, 16 F.3d 138 (7th Cir. 1993).  "The existence

of one or more of these factors may weigh in favor of a finding of citizenship, but no single factor is conclusive." *Midwest Transit*, 79 Fed. Appx. at 208.

In their brief in support of their motion to dismiss, defendants questioned whether David Westrate and Patricia McHugh were domiciled in Florida in August 2016 because they both were long-time residents of Eau Claire, Wisconsin and still maintain homes there. In response, Larchmont submitted declarations showing that even though Westrate and Patricia McHugh have vacation properties in Wisconsin, they reside and conduct their daily affairs primarily in Florida and intend to make Florida their permanent home. Defendants have not refuted this evidence or submitted any rebuttal evidence. Accordingly, I find that Patricia McHugh, Westrate, his Roth IRAs and his traditional IRAs all are domiciled in Florida.

Left in play are the domiciles of Dr. Benham and Richard McHugh. Both men were long-term residents of Wisconsin and both men continued to work, own property, and maintain business interests in Wisconsin after moving to Florida with their wives. The question is whether Florida is where they each intended to establish a permanent home, or whether they purchased their Florida residences merely for vacation or other purposes.

The Court of Appeals for the Seventh Circuit has recognized that "in this age of second homes and speedy transportation, picking out a single state to be an individual's domicile can be a difficult, even a rather arbitrary, undertaking." *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991). In *Galva*, the defendant was born and raised and lived most of his 68 years in Peoria, Illinois. After quitting his job and selling his stock in Galva (which he allegedly defrauded), defendant spent several months in Florida, where he registered to vote, filed income tax returns, and obtained a driver's license. *Id.* The court of appeals held that the district court

did not clearly err when it concluded that defendant did all of those things in order to shelter the proceeds from the sale of his Galva stock from Illinois taxes. *Id.*

Unlike the situation in *Galva*, there is no evidence in this case that either Dr. Benham or Richard McHugh set up residency in Florida for any other purpose other than their stated intent of making Florida their permanent homes. *Sadat v. Mertes*, 615 F.2d 1176, 1181 (7th Cir. 1980) (internal quotation omitted) ("Intent is a state of mind which must be evaluated through the circumstantial evidence of a person's manifested conduct."). Both men made their move to Florida well before Larchmont filed suit in this case.

At the hearing, defendants hammered on the large number of days Dr. Benham spends working in Wisconsin. This clearly is relevant to the court's determination, but this fact alone does not discredit Dr. Benham's claim of Florida residency. Although Dr. Benham spends about half of his time every month working at his dental practice in Wisconsin, he always returns to Florida, which he considers his primary residence. Dr. Benham credibly testified that once he moved to Florida with his wife in 2002, he intended to make it their permanent, fixed home. *See 24 Hour Fitness USA, Inc. v. Bally Total Fitness Holding Corp.*, 2008 WL 4671748, at *5 (N.D. Ill. Oct. 21, 2008) ("Central to this 'center of gravity' analysis is the location of an individual's family–particularly his spouse and children."). Dr. Benham has established enough important, deep roots in Florida–family, church, voting, taxes, social security and medicare payments–to establish that Florida is his home, the place where is actually is domiciled.

As additional evidence of his intent to remain in Florida indefinitely, Dr. Benham testified that he is in the process of selling his dental practice. Virtually all of the ties Dr. Benham has to Wisconsin—including an accountant, investment advisors, a car, political

12

contributions, and a bank account—relate to his business.  Although Dr. Benham has a country club membership in Wisconsin, he golfs there when he is in the state for work.  The work connections are more than nothing, but they are not enough to outweigh the stronger evidence that Dr. Benham is domiciled in Florida.

Similarly, a review of Richard McHugh's declaration and testimony shows that he moved to Florida with his wife in December 2014 and intends to stay there.  True, McHugh spends six months of his time in Wisconsin at the houses he owns in Eau Claire and Augusta, and he attends board meetings six to eight times a year in Eau Claire, but the preponderance of the evidence shows that McHugh's life actually is centered in Florida.  McHugh substantially reduced his workload when he moved to Florida and he conducts most of his Wisconsin business from his home in Naples.  McHugh's Wisconsin accountant, investment advisor, bank account, and political contributions all are related to his businesses in this state.  As with Dr. Benham, McHugh's business connections to Wisconsin are not weightless, but they do not outweigh the evidence that McHugh is domiciled in Florida.

Additionally, I credit McHugh's testimony that he is in the process of retiring fully from his positions in the Wisconsin companies and the bank's board of directors.  There is no evidence that Richard McHugh ever intended to keep Wisconsin as his permanent home after he moved to Florida in late 2014.

In sum, I conclude that all of the individual members of Larchmont are domiciled in Florida.  This makes Larchmont a citizen of Florida.  Because both defendants are citizens of Wisconsin, diversity exists and this suit can remain in federal court.

ORDER

IT IS ORDERED that the motion filed by defendants North Shore Services, LLC and

William Bethke to dismiss the claims against them for lack of diversity jurisdiction, dkt. 11, is

DENIED.

Entered this 13th day of January, 2017.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

14